Justice KAGAN delivered the opinion of the Court.
Class arbitration is a matter of consent: An arbitrator may employ class procedures only if the parties have authorized them. See *566 Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 684, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). In this case, an arbitrator found that the parties' contract provided for class arbitration. The question presented is whether in doing so he "exceeded [his] powers" under § 10(a)(4) of the Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1 et seq. We conclude that the arbitrator's decision survives the limited judicial review § 10(a)(4) allows. *2067 I
Respondent John Sutter, a pediatrician, entered into a contract with petitioner Oxford Health Plans, a health insurance company. Sutter agreed to provide medical care to members of Oxford's network, and Oxford agreed to pay for those services at prescribed rates. Several years later, Sutter filed suit against Oxford in New Jersey Superior Court on behalf of himself and a proposed class of other New Jersey physicians under contract with Oxford. The complaint alleged that Oxford had failed to make full and prompt payment to the doctors, in violation of their agreements and various state laws.
Oxford moved to compel arbitration of Sutter's claims, relying on the following clause in their contract:
"No civil action concerning any dispute arising under this Agreement shall be instituted before any court, and all such disputes shall be submitted to final and binding arbitration in New Jersey, pursuant to the rules of the American Arbitration Association with one arbitrator." App. 15-16.
The state court granted Oxford's motion, thus referring the suit to arbitration.
The parties agreed that the arbitrator should decide whether their contract authorized class arbitration, and he determined that it did. Noting that the question turned on "construction of the parties' agreement," the arbitrator focused on the text of the arbitration clause quoted above. Id., at 30. He reasoned that the clause sent to arbitration *567 "the same universal class of disputes" that it barred the parties from bringing "as civil actions" in court: The "intent of the clause" was "to vest in the arbitration process everything that is prohibited from the court process." Id., at 31. And a class action, the arbitrator continued, "is plainly one of the possible forms of civil action that could be brought in a court" absent the agreement. Ibid. Accordingly, he concluded that "on its face, the arbitration clause ... expresses the parties' intent that class arbitration can be maintained." Id., at 32.
Oxford filed a motion in federal court to vacate the arbitrator's decision on the ground that he had "exceeded [his] powers" under § 10(a)(4) of the FAA. The District Court denied the motion, and the Court of Appeals for the Third Circuit affirmed. See 05-CV-2198, 2005 WL 6795061 (D.N.J., Oct. 31, 2005), aff'd, 227 Fed.Appx. 135 (2007).
While the arbitration proceeded, this Court held in Stolt-Nielsen that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." 559 U.S., at 684, 130 S.Ct. 1758. The parties in Stolt-Nielsen had stipulated that they had never reached an agreement on class arbitration. Relying on § 10(a)(4), we vacated the arbitrators' decision approving class proceedings because, in the absence of such an agreement, the arbitrators had "simply ... imposed [their] own view of sound policy." Id., at 672, 130 S.Ct. 1758.
Oxford immediately asked the arbitrator to reconsider his decision on class arbitration in light of Stolt-Nielsen . The arbitrator issued a new opinion holding that Stolt-Nielsen had no effect on the case because this agreement authorized class arbitration. Unlike in Stolt-Nielsen, the arbitrator explained, the parties here disputed the meaning of their contract; he had therefore been required "to construe the arbitration clause in the ordinary way to glean the parties' intent." App. 72. And in performing that task, the arbitrator continued, he had "found that the arbitration clause *568 unambiguously evinced an intention to allow class arbitration." Id., at 70. The arbitrator concluded by reconfirming *2068 his reasons for so construing the clause.
Oxford then returned to federal court, renewing its effort to vacate the arbitrator's decision under § 10(a)(4). Once again, the District Court denied the motion, and the Third Circuit affirmed. The Court of Appeals first underscored the limited scope of judicial review that § 10(a)(4) allows: So long as an arbitrator "makes a good faith attempt" to interpret a contract, "even serious errors of law or fact will not subject his award to vacatur." 675 F.3d 215, 220 (2012). Oxford could not prevail under that standard, the court held, because the arbitrator had "endeavored to give effect to the parties' intent" and "articulate[d] a contractual basis for his decision." Id., at 223-224. Oxford's objections to the ruling were "simply dressed-up arguments that the arbitrator interpreted its agreement erroneously." Id., at 224.
We granted certiorari, 568 U.S. ----, 133 S.Ct. 786, 184 L.Ed.2d 526 (2012), to address a circuit split on whether § 10(a)(4) allows a court to vacate an arbitral award in similar circumstances.[1] Holding that it does not, we affirm the Court of Appeals.
II
Under the FAA, courts may vacate an arbitrator's decision "only in very unusual circumstances." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). That limited judicial review, we have explained, "maintain[s] arbitration's essential virtue of resolving disputes straightaway." Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 588, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008). If parties could take "full-bore legal and evidentiary appeals," arbitration would become "merely a prelude *569 to a more cumbersome and time-consuming judicial review process." Ibid.
Here, Oxford invokes § 10(a)(4) of the Act, which authorizes a federal court to set aside an arbitral award "where the arbitrator[ ] exceeded [his] powers." A party seeking relief under that provision bears a heavy burden. "It is not enough ... to show that the [arbitrator] committed an error-or even a serious error." Stolt-Nielsen, 559 U.S., at 671, 130 S.Ct. 1758. Because the parties "bargained for the arbitrator's construction of their agreement," an arbitral decision "even arguably construing or applying the contract" must stand, regardless of a court's view of its (de)merits. Eastern Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (quoting Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) ; Paperworkers v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) ; internal quotation marks omitted). Only if "the arbitrator act[s] outside the scope of his contractually delegated authority"-issuing an award that "simply reflect[s] [his] own notions of [economic] justice" rather than "draw[ing] its essence from the contract"-may a court overturn his determination. Eastern Associated Coal, 531 U.S., at 62, 121 S.Ct. 462 (quoting Misco, 484 U.S., at 38, 108 S.Ct. 364). So the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.[2]
*2069 *570 And we have already all but answered that question just by summarizing the arbitrator's decisions, see supra, at 2071 - 2072; they are, through and through, interpretations of the parties' agreement. The arbitrator's first ruling recited the "question of construction" the parties had submitted to him: "whether [their] Agreement allows for class action arbitration." App. 29-30. To resolve that matter, the arbitrator focused on the arbitration clause's text, analyzing (whether correctly or not makes no difference) the scope of both what it barred from court and what it sent to arbitration. The arbitrator concluded, based on that textual exegesis, that the clause "on its face ... expresses the parties' intent that class action arbitration can be maintained." Id., at 32. When Oxford requested reconsideration in light of Stolt-Nielsen, the arbitrator explained that his prior decision was "concerned solely with the parties' intent as evidenced by the words of the arbitration clause itself." App. 69. He then ran through his textual analysis again, and reiterated his conclusion: "[T]he text of the clause itself authorizes" class arbitration. Id., at 73. Twice, then, the arbitrator did what the parties had asked: He considered their contract and decided whether it reflected an agreement to permit class proceedings. That suffices to show that the arbitrator did not " exceed[ ] [his] powers." § 10(a)(4).
Oxford's contrary view relies principally on Stolt-Nielsen . As noted earlier, we found there that an arbitration panel exceeded its powers under § 10(a)(4) when it ordered a party to submit to class arbitration. See supra, at 2072. Oxford takes that decision to mean that "even the 'high hurdle' of Section 10(a)(4) review is overcome when an arbitrator imposes *571 class arbitration without a sufficient contractual basis." Reply Brief 5 (quoting Stolt-Nielsen, 559 U.S., at 671, 130 S.Ct. 1758). Under Stolt-Nielsen , Oxford asserts, a court may thus vacate " as ultra vires " an arbitral decision like this one for misconstruing a contract to approve class proceedings. Reply Brief 7.
But Oxford misreads Stolt-Nielsen : We overturned the arbitral decision there because it lacked any contractual basis for ordering class procedures, not because it lacked, in Oxford's terminology, a "sufficient" one. The parties in Stolt-Nielsen had entered into an unusual stipulation that they had never reached an agreement on class arbitration. See 559 U.S., at 668-669, 673, 130 S.Ct. 1758. In that circumstance, we noted, the panel's decision was not-indeed, could not have been-"based on a determination regarding the parties' intent." Id., at 673, n. 4, 130 S.Ct. 1758;
id="p2070" href="#p2070" data-label="2070" data-citation-index="1" class="page-label">*2070see id., at 676, 130 S.Ct. 1758 ("Th[e] stipulation left no room for an inquiry regarding the parties' intent"). Nor, we continued, did the panel attempt to ascertain whether federal or state law established a "default rule" to take effect absent an agreement. Id., at 673, 130 S.Ct. 1758. Instead, "the panel simply imposed its own conception of sound policy" when it ordered class proceedings. Id., at 675, 130 S.Ct. 1758. But "the task of an arbitrator," we stated, "is to interpret and enforce a contract, not to make public policy." Id., at 672, 130 S.Ct. 1758. In "impos[ing] its own policy choice," the panel "thus exceeded its powers." Id., at 677, 130 S.Ct. 1758.
The contrast with this case is stark. In Stolt-Nielsen, the arbitrators did not construe the parties' contract, and did not identify any agreement authorizing class proceedings. So in setting aside the arbitrators' decision, we found not that they had misinterpreted the contract, but that they had abandoned their interpretive role. Here, the arbitrator did construe the contract (focusing, per usual, on its language), and did find an agreement to permit class arbitration. So to overturn his decision, we would have to rely on a finding that he misapprehended the parties' intent. But § 10(a)(4)
*572 bars that course: It permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly. Stolt-Nielsen and this case thus fall on opposite sides of the line that § 10(a)(4) draws to delimit judicial review of arbitral decisions.
The remainder of Oxford's argument addresses merely the merits: The arbitrator, Oxford contends at length, badly misunderstood the contract's arbitration clause. See Brief for Petitioner 21-28. The key text, again, goes as follows: "No civil action concerning any dispute arising under this Agreement shall be instituted before any court, and all such disputes shall be submitted to final and binding arbitration." App. 15-16. The arbitrator thought that clause sent to arbitration all "civil action[s]" barred from court, and viewed class actions as falling within that category. See supra, at 2071 - 2072. But Oxford points out that the provision submits to arbitration not any "civil action[s]," but instead any "dispute arising under" the agreement. And in any event, Oxford claims, a class action is not a form of "civil action," as the arbitrator thought, but merely a procedural device that may be available in a court. At bottom, Oxford maintains, this is a garden-variety arbitration clause, lacking any of the terms or features that would indicate an agreement to use class procedures.
We reject this argument because, and only because, it is not properly addressed to a court. Nothing we say in this opinion should be taken to reflect any agreement with the arbitrator's contract interpretation, or any quarrel with Oxford's contrary reading. All we say is that convincing a court of an arbitrator's error-even his grave error-is not enough. So long as the arbitrator was "arguably construing" the contract-which this one was-a court may not correct his mistakes under § 10(a)(4). Eastern Associated Coal, 531 U.S., at 62, 121 S.Ct. 462 (internal quotation marks omitted). The potential for those mistakes is the price of agreeing to *573 arbitration. As we have held before, we hold again: "It is the arbitrator's construction [of the contract] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *2071 Enterprise Wheel, 363 U.S. at 599, 80 S.Ct. 1358. The arbitrator's construction holds, however good, bad, or ugly.
In sum, Oxford chose arbitration, and it must now live with that choice. Oxford agreed with Sutter that an arbitrator should determine what their contract meant, including whether its terms approved class arbitration. The arbitrator did what the parties requested: He provided an interpretation of the contract resolving that disputed issue. His interpretation went against Oxford, maybe mistakenly so. But still, Oxford does not get to rerun the matter in a court. Under § 10(a)(4), the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all. Because he did, and therefore did not "exceed his powers," we cannot give Oxford the relief it wants. We accordingly affirm the judgment of the Court of Appeals.
It is so ordered.
Justice ALITO, with whom Justice THOMAS joins, concurring.
As the Court explains, "[c]lass arbitration is a matter of consent," ante, at 2066, and petitioner consented to the arbitrator's authority by conceding that he should decide in the first instance whether the contract authorizes class arbitration. The Court accordingly refuses to set aside the arbitrator's ruling because he was " 'arguably construing ... the contract' " when he allowed respondent to proceed on a classwide basis. Ante, at 2070 (quoting Eastern Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) ). Today's result follows directly from petitioner's concession and the narrow judicial *574 review that federal law allows in arbitration cases. See 9 U.S.C. § 10(a).
But unlike petitioner, absent members of the plaintiff class never conceded that the contract authorizes the arbitrator to decide whether to conduct class arbitration. It doesn't. If we were reviewing the arbitrator's interpretation of the contract de novo, we would have little trouble concluding that he improperly inferred "[a]n implicit agreement to authorize class-action arbitration ... from the fact of the parties' agreement to arbitrate." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 685, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010).
With no reason to think that the absent class members ever agreed to class arbitration, it is far from clear that they will be bound by the arbitrator's ultimate resolution of this dispute. Arbitration "is a matter of consent, not coercion," Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), and the absent members of the plaintiff class have not submitted themselves to this arbitrator's authority in any way. It is true that they signed contracts with arbitration clauses materially identical to those signed by the plaintiff who brought this suit. But an arbitrator's erroneous interpretation of contracts that do not authorize class arbitration cannot bind someone who has not authorized the arbitrator to make that determination. As the Court explains, "[a]n arbitrator may employ class procedures only if the parties have authorized them." Ante, at 2066.
The distribution of opt-out notices does not cure this fundamental flaw in the class arbitration proceeding in this case. "[A]rbitration is simply a matter of contract between the parties," First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), and an offeree's silence does not normally modify the terms of a contract, 1 Restatement (Second) of Contracts § 69(1) (1979). Accordingly, at least where absent class *2072 members have not been required to opt in, it is difficult to see how an arbitrator's decision to conduct class proceedings *575 could bind absent class members who have not authorized the arbitrator to decide on a classwide basis which arbitration procedures are to be used.
Class arbitrations that are vulnerable to collateral attack allow absent class members to unfairly claim the "benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one," American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 546-547, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). In the absence of concessions like Oxford's, this possibility should give courts pause before concluding that the availability of class arbitration is a question the arbitrator should decide. But because that argument was not available to petitioner in light of its concession below, I join the opinion of the Court.

Compare 675 F.3d 215 (C.A.3 2012) (case below) (vacatur not proper), and Jock v. Sterling Jewelers Inc., 646 F.3d 113 (C.A.2 2011) (same), with Reed v. Florida Metropolitan Univ., Inc., 681 F.3d 630 (C.A.5 2012) (vacatur proper).

We would face a different issue if Oxford had argued below that the availability of class arbitration is a so-called "question of arbitrability." Those questions-which "include certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy"-are presumptively for courts to decide. Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (plurality opinion). A court may therefore review an arbitrator's determination of such a matter de novo absent "clear[ ] and unmistakabl[e]" evidence that the parties wanted an arbitrator to resolve the dispute. AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Stolt-Nielsen made clear that this Court has not yet decided whether the availability of class arbitration is a question of arbitrability. See 559 U.S., at 680, 130 S.Ct. 1758. But this case gives us no opportunity to do so because Oxford agreed that the arbitrator should determine whether its contract with Sutter authorized class procedures. See Brief for Petitioner 38, n. 9 (conceding this point). Indeed, Oxford submitted that issue to the arbitrator not once, but twice-and the second time after Stolt-Nielsen flagged that it might be a question of arbitrability.