**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 23-2764 & 24-1701

_____

SUSAN MCMASTERS,
individually and as Administratrix of the
Estate of Baby Doe,
Appellant

v.

RESTAURANT BRANDS INTERNATIONAL, INC., trading and doing business as
BURGER KING; CARROLS LLC BK, trading and doing business as
BURGER KING; CARROLS BK CORPORATION, trading and doing business as
BURGER KING; CARROLS LLC, trading and doing business as BURGER KING;
CARROLS RESTAURANT GROUP, INC., trading and doing business as BURGER
KING

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:20-cv-00791)
U.S. District Judge: Honorable David S. Cercone

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 29, 2025

_____

Before: SHWARTZ, MATEY, and SCIRICA, <u>Circuit Judges</u>.

(Filed: November 17, 2025)

_____

OPINION[*]

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

SHWARTZ, Circuit Judge.

Susan McMasters appeals the District Court's orders compelling arbitration and confirming the arbitrator's award. Because McMasters assented to arbitration and there are no grounds to vacate the award, we will affirm.

I

While working at Carrols LLC's Burger King restaurant, McMasters experienced vaginal bleeding and cramping, was unable to get coverage, and delayed going to the hospital. At the hospital, she learned she had a miscarriage. She thereafter resigned and sued Carrols, alleging it, among other things, (1) discriminated against her on the basis of pregnancy because it failed to accommodate her on the night of her medical incident, and (2) constructively discharged her via the discrimination she experienced in violation of the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e, e-2(k) and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. and Cons. Stat. §§ 951-963.[1]

The District Court granted Carrols's motion to compel arbitration and stayed the case. McMasters v. Rest. Brands Int'l, Inc., No. 20-791, 2021 WL 11728156, at *4-10 (W.D. Pa. Aug. 25, 2021) ("McMasters I"). Thereafter, the Arbitrator awarded Carrols summary judgment and the District Court denied McMasters's request to vacate the

_____

[1] McMasters does not challenge the dismissal of Defendant Restaurant Brands International, Inc. from this lawsuit or her state-law survival and wrongful death actions on behalf of her unborn child. McMasters has withdrawn her retaliation and disability discrimination claims.

award and instead confirmed it. McMasters v. Rest. Brands Int'l, Inc., 724 F. Supp. 3d 391, 398 (W.D. Pa. 2024) ("McMasters II").

McMasters appeals the orders compelling arbitration and confirming the award.

## II[2]

### A[3]

We first address McMasters's challenge to the order compelling arbitration. When McMasters began work at the Carrols Burger King, she signed the second page of a two-page arbitration agreement (the "Agreement"), which set forth the requirement that employees seek resolution of specific disputes, or "Claims,"[4] against the employer before an arbitrator. JA 16. The page McMasters signed contains an "Employee Acknowledgment" where employees agree (1) to arbitrate "Claims, as described above," which refers to information on the first page, (2) that they "read and underst[ood] this arbitration agreement," (3) that they had the opportunity to ask questions which have been answered, and (4) that they were told the applicable arbitration rules and where to

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291 and the Federal Arbitration Act, 9 U.S.C. § 16(a)(1)(D), (3).

[3] "We exercise plenary review over the District Court's order on a motion to compel arbitration." Flintkote Co. v. Aviva PLC, 769 F.3d 215, 219 (3d Cir. 2014). When evidence outside the pleadings is presented, "[w]e use the standard for summary judgment under Federal Rule of Civil Procedure 56(a)," so such a motion "should only be granted if there is no genuine dispute as to any material fact and, after viewing facts and drawing inferences in favor of the non-moving party, the party moving to compel is entitled to judgment as a matter of law." White v. Sunoco, Inc., 870 F.3d 257, 262 (3d Cir. 2017).

[4] The Agreement defines "Claims" as Title VII claims and similar state law claims.

3

access them.[5]  JA 17.  McMasters asserts that she did not receive the Agreement's first page,[6] but testified that she understood signing the Agreement was a "condition of employment," DA 4, and that she did not read or ask questions about it, despite the opportunity to do so.

Pursuant to the Agreement, Carrols moved to compel arbitration on McMasters's claims, which the District Court granted.  McMasters I, 2021 WL 11728156, at *10.  The Court (1) found McMasters agreed to arbitration, and (2) rejected her contention "that page [one] was added after McMasters signed the Agreement."  Id. at *4-5, 6-7.

To determine whether the District Court correctly compelled McMasters to arbitrate her claims, we must examine whether there is a "valid agreement to arbitrate between the parties."  Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014) (citation omitted).  In Pennsylvania, both parties must manifest an intention to be bound by the agreement.[7]  Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002).  McMasters claims there is a material dispute as to whether she assented to be bound by the terms of the Agreement.[8]

---

[5] Information about the arbitration requirement was also accessible to employees through other resources, including on a poster in the restaurant and an employee handbook, which McMasters acknowledges receiving but inaccurately suggests did not contain the arbitration requirement.

[6] McMaster also claims she did not notice the page she signed was the second page of the two-page document.

[7] The parties do not dispute that Pennsylvania law applies.

[8] Because McMasters (1) challenged whether a contract had been formed at the motion to compel stage, and (2) that issue is for a court, rather than an arbitrator, to decide, her failure to again raise this argument during the arbitration does not bar her from raising it here.  See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967).

4

There is no dispute McMasters's signature is on the second page of the Agreement. A party's signature to a contract is her manifestation of assent to be bound by that agreement. See Simeone v. Simeone, 581 A.2d 162, 165 (Pa. 1990) (holding those who sign a contract "are normally bound by their agreements"). The record also establishes that: (1) the second page contains an "Employee Acknowledgement" where she assented to arbitrate "Claims," which are described on the first page, JA 17, (2) by signing that page, she acknowledged she understood the Agreement, had her questions answered, and learned about the applicable arbitration rules and where to find them, (3) she understood the Agreement was a "condition of employment," DA 4, and (4) she could find information on the arbitration requirement through materials Carrols provided.

To the extent McMasters argues she should be relieved of her obligation to arbitrate based on her assertion she never received the first page of the Agreement, that fails. Most significantly, the Agreement was only two pages and the page she signed clearly referenced the existence of a first page by stating "Claims, as described above," and noting, at the bottom of the page, "2 of 2." JA 17. Furthermore, Carrols presented evidence that its practice was to furnish its new hires both pages together with other onboarding documents and the employee handbook and courts, like the District Court did here, see McMasters I, 2021 WL 11728156, at *4-6, may rely on a company's business practices to prove its employees acted in accordance with that practice. Cf. Fed. R. Evid. 406; see also Tinder v. Pinkerton Sec., 305 F.3d 728, 732, 735 (7th Cir. 2002) (finding plaintiff received arbitration agreement where two managers said they distributed brochures containing agreement to employees with their paychecks, despite plaintiff's

contrary statements).

For these reasons, the District Court correctly concluded that McMasters assented to the Agreement and was bound by its terms.[9] See Simeone, 581 A.2d at 165 (noting contracting parties are bound "without regard to whether the terms thereof were read and fully understood"); Denlinger, Inc. v. Dendler, 608 A.2d 1061, 1070 (Pa. Super. Ct. 1992) (recognizing that one who signs and has "the capacity to understand a written document . . . is bound by his signature." (omission in original and citations and quotation marks omitted)). We will therefore affirm the order compelling arbitration.

B[10]

We next examine McMasters's challenge to the order denying her request to vacate and granting Carrols's motion to confirm the award. We first offer additional factual background relevant to this issue.

While working a closing shift at Burger King, McMasters experienced severe cramping and vaginal bleeding so she called her restaurant manager and others looking for someone to relieve her.[11] She was unable to find sufficient coverage either because her coworkers did not answer or had other conflicts.[12] Worried she would lose her job if

_____

[9] McMasters does not dispute that Agreement compels arbitration by its terms.

[10] When reviewing the denial of a motion to vacate an arbitration award, we review legal conclusions de novo and factual findings for clear error. Whitehead v. Pullman Grp., LLC, 811 F.3d 116, 119 n.23 (3d Cir. 2016).

[11] That manager told McMasters she "needed to get to the hospital." JA 210. According to the manager, she also told McMasters multiple times to leave and shut down the store, but McMasters disputes this fact.

[12] For example, one employee, who had left his shift earlier that evening, had gone to a bar and could not return because of Carrols's "no alcohol before work" policy. One

6

she left, McMasters did not go to the hospital until her shift ended. At the hospital, she learned she had a miscarriage. When McMasters returned to work, one of her peers stopped communicating with her and her managers made no effort to correct this behavior. She resigned from the Burger King because "it was not very pleasant" to work there and later brought this suit, JA 271, which was sent to arbitration.

The Arbitrator granted Carrols's motion for summary judgment on McMasters's pregnancy discrimination and hostile work environment claims. On the pregnancy discrimination claim,[13] the Arbitrator concluded that (1) McMasters did not show Carrols's nondiscriminatory reasons for its inability to send coverage were pretextual, and (2) her assertion that she need not show pretext because she had "direct evidence" of discrimination was inapt. PA 19. On the constructive discharge claim, the Arbitrator concluded that the alleged working conditions after she returned to work were not so intolerable that they forced her to resign. The District Court confirmed the Arbitrator's award. McMasters II, 724 F. Supp. 3d at 395-96.

Courts may disturb an arbitrator's award only on the specific grounds set forth in the Federal Arbitration Act. 9 U.S.C. § 10(a). One such ground includes "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Id. § 10(a)(4). An arbitrator "oversteps these limits" by granting relief in a form that cannot be "rationally

---

manager herself was in the hospital and another was on medical leave. One crew member, however, did come in to assist.

[13] The Arbitrator noted that a pregnancy discrimination claim under the PHRA is analyzed under the same standard as that of Title VII.

derived" from the parties' submissions or "issues an award that is so completely irrational that it lacks support altogether." CPR Mgmt., S.A. v. Devon Park Bioventures, L.P., 19 F.4th 236, 246 (3d Cir. 2021) (citation omitted).

The award here is "rationally derived" from the evidence and applicable legal principles. Id. (quoting Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 219-20 (3d Cir. 2012), aff'd, 569 U.S. 564 (2013)). The Arbitrator (1) applied the relevant law for the pregnancy discrimination and constructive discharge claims,[14] (2) demonstrated it understood the record, and (3) rationally assessed McMasters's claims.

Any argument to the contrary lacks merit. First, although the Arbitrator stated that Carrols "could not have been responsible for her miscarriage,"[15] PA 18, it did not rely on this statement in issuing the award, so the statement does not render the award irrational. Cf. Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d 237, 243 (3d Cir. 2005) (vacatur not warranted under § 10(a)(4) where arbitrator added language to a contract because there was "sufficient substance in the remainder of the discussion to pass the minimum rationality threshold"). Second, assuming the Arbitrator misstated the law by saying that the "direct evidence" framework applies only to disability claims, PA 19, the Arbitrator correctly applied the McDonnell Douglas burden-shifting to the

---

[14] See Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 364-66 (3d Cir.), order clarified, 543 F.3d 178 (3d Cir. 2008) (identifying Title VII pregnancy discrimination elements claim and applying McDonnell Douglas); Mandel v. M & Q Packaging Corp., 706 F.3d 157, 169 (3d Cir. 2013) (constructive discharge requires that the employer permit employment "conditions of discrimination . . . so intolerable that a reasonable person subject to them would resign." (citation omitted).).

[15] McMasters asserts that this statement was irrational because it pertained to her already-dismissed wrongful death and survival action claims.

8

pregnancy discrimination claim here because direct evidence of discrimination was lacking.[16] Indeed, nothing in the record shows that the Arbitrator disregarded the applicable legal principles in this case and thus did not engage in a "manifest disregard of law."[17] Metromedia Energy, Inc. v. Enserch Energy Servs., Inc., 409 F.3d 574, 578 (3d Cir. 2005) (vacatur inappropriate when an arbitrator "merely erroneously interprets[] the law").[18] Because there is no basis to vacate the Arbitrator's award, we will affirm the District Court's order confirming it.

III

For the foregoing reasons, we will affirm.

---

[16] McMasters's evidence that her managers could not relieve her the night she went to the hospital is not direct evidence. See Qin v. Vertex, Inc., 100 F.4th 458, 472 (3d Cir. 2024) ("direct evidence" is evidence "so revealing of discriminatory animus" that burden-shifting is unnecessary (citation omitted)).

[17] We that "manifest disregard of law" is a judicial gloss on the statutory grounds for vacatur. Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 220 n.2 (3d Cir. 2012) (citation omitted).

[18] McMasters's argument that Carrols misunderstands what constitutes pregnancy under the law is irrelevant because the Arbitrator rejected her claim, not because of her pregnancy status, but rather based on the lack of evidence showing Carrols' employees' actions were motivated by an improper ground.

9