**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 15-4030 and 16-1308
_____

ROQUETTE FRÈRES S.A.

v.

SOLAZYME, INC.

(D. Del. No. 1-14-cv-01442

ROQUETTE FRÈRES S.A.

v.

SOLAZYME, INC.

(D. Del. No. 1-15-cv-00125)

Roquette Freres S.A.,
Appellant

On Appeal from the United States District Court
for the District of Delaware
(District D. Del. Nos. 1-14-cv-01442 & 1-15-cv-00125)
District Judge:  Honorable Sue L. Robinson

Argued on September 21, 2016

(Filed: December 20, 2016)

Before:  McKEE[1], HARDIMAN and RENDELL, <u>Circuit Judges</u>

Kenneth J. Nachbar
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE 19899

Douglas V. Rigler
Young & Thompson
209 Madison Street
Suite 500
Alexandria, VA 22314

Daniel J. Thomasch    **(Argued)**
Gibson, Dunn & Crutcher
200 Park Avenue
47th Floor
New York, NY 10166
                    *Counsel for Appellant*


Frederick L. Cottrell, III
Selena E. Molina
Chad M. Shandler
Richards, Layton & Finger
920 North King Street
One Rodney Square
Wilmington, DE 19801

Daralyn J. Durie    **(Argued)**
Laura E. Miller
Timothy C. Saulsbury
Durie Tangri
217 Leidesdorff Street
San Francisco, CA 94111
                    *Counsel for Appellee*

---

[1] Honorable Theodore A. McKee was Chief Judge at the time this appeal was argued. Judge McKee completed his term as Chief Judge on September 30, 2016.

## O P I N I O N[*]

**RENDELL**, <u>Circuit Judge</u>:

In this appeal Roquette Frères urges that the District Court erred in confirming an arbitration award in an intellectual property dispute following dissolution of a joint venture. Roquette Frères, S.A. and Solazyme, Inc. entered into a joint venture named "Solazyme Roquette Nutritionals" ("SRN") to develop and commercialize Solazyme's microalgal products. The joint venture dissolved, and allocation of SRN's intellectual property became the subject of an arbitration between Roquette and Solazyme. The arbitration Panel granted three types of relief to Solazyme: (1) it assigned SRN's intellectual property to Solazyme alone; (2) it assigned patent applications Roquette filed independently to Solazyme; and (3) it awarded Solazyme attorneys' fees and costs.

Roquette argues on appeal that the Panel did not have the authority to issue any order concerning Roquette's independent patent applications; that it should have assigned SRN's intellectual property to Solazyme and Roquette jointly; and that vacatur of the award also requires vacating the attorneys' fees and costs award. Because the Panel did not exceed its authority in making these determinations, we will affirm the District Court's order.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

3

Because the parties are well aware of the factual and procedural aspects of this litigation we will not recount them here.

The standard of review applied by the District Court when asked to confirm an arbitration award is extremely deferential. The District Court recognized this and noted that "[w]hen parties agree to resolve their disputes before an arbitrator without involving the courts, the courts will enforce the bargains implicit in such agreements by enforcing arbitration awards absent a reason to doubt the authority or integrity of the arbitral forum." (J.A. 9 (quoting *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012) (quotation marks omitted))). Because Roquette did not challenge the integrity of the Panel, the award must be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." (*Id.* (quoting 9 U.S.C. § 10(a)(4) (quotation marks omitted))). The Panel's authority derives from contract; the question before the District Court, then, was whether the Panel's award was "totally unsupported by principles of contract construction." (J.A. 10 (citation and quotation marks omitted)). In reviewing the District Court's confirmation of an arbitration award, we will accept findings of fact that are not "clearly erroneous" but decide questions of law *de novo*. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947–48 (1995).

The thrust of Roquette's argument on appeal—as it was in the District Court—is that the arbitration Panel exceeded its authority by (1) declaring a breach under the Material Transfer Agreement ("MTA") executed between Roquette and SRN which was outside the scope of the JVOA and its arbitration provisions; and (2) taking Roquette

4

property and giving it to Solazyme as part of the award.[2]  But that is not how the District Court, and we, view the Panel's award.

First, it should be noted that the arbitration provision of the Joint Venture Operating Agreement ("JVOA") is very broad.  It states:

> Any dispute of a legal nature arising out of or connected with the interpretation or enforcement of the legal duties, rights and obligations under this Agreement, including without limitation, its validity, application (including whether a product is within the Field) or termination, that cannot be settled by negotiation pursuant to Section 22.1 or mediation pursuant to Section 22.2 shall be referred to and finally resolved by arbitration under the Arbitration Rules of the Center for Public Resources in New York.

(J.A. 138).

At the heart of the dispute before us is how the Panel should have viewed the secret filing, by Roquette, of patent applications in Europe that mirrored patent applications filed by SRN. The Panel noted that at least two such applications claimed "virtually identical subject matter" as earlier SRN applications "but with none of the Solazyme employees listed as inventors." (J.A 52). The filing of these applications did not come to light until the arbitration hearing and, despite discovery requests, Roquette

---

[2] Roquette also argues that the Panel improperly reformed certain language of the License Agreement when it assigned the rights to improvements made to Solazyme property by SRN to Solazyme directly, even when SRN was working jointly with Solazyme or Roquette. Whatever the merits of this dispute, we perceive that the Panel interpreted the language consistent with ordinary principles of contract construction, including the need to avoid "absurd results." (J.A. 60–61). For that reason, we will not second guess the Panel on this interpretive point. *See Sutter*, 675 F.3d at 220 ("even serious errors of law or fact" will not vacate an award where arbitrator made good faith attempt to interpret contract).

refused to produce the applications. Instead, Roquette filed litigation in the Delaware District Court contending that the arbitrators were exceeding their contractual authority.

In its award the Panel stated:

> The evidence at the hearing revealed that during the life of the Joint Venture, Roquette, surreptitiously, and without notice to Solazyme, filed patent applications on its own behalf, based upon patent applications filed by the Joint Venture.

(J.A. 52).

The Panel was clearly skeptical as to Roquette's assertion of a right to these "copycat" applications, and properly credited Roquette's acknowledgment "that their patent applications were for products and processes that were based on the Intellectual Property owned by SRN." (J.A. 55).

The Panel then turned to the issue before it, namely, the distribution of SRN's Intellectual Property assets upon dissolution. Rejecting Roquette's interpretation of the controlling JVOA provisions, the Panel read all the relevant agreements together and concluded that the following provisions of the JVOA controlled what should occur upon dissolution under the facts of the case:

> (i) all Improvements to the License Intellectual Property licensed to the Company by Solazyme, and any improvements, enhancements or refinements thereto made after the Accumulation Termination Date, shall be assigned by the Company to Solazyme;

(J.A. 57).

"Improvements" were defined in the parties' License Agreement (§1.15):

> Improvements shall mean any improvements, enhancements, modifications or refinements, patented or not, to the Licensed

6

Intellectual Property that are reduced to practice or otherwise developed prior to the Accumulation Termination Date, by the applicable Party alone or in collaboration with one or more Third Parties, which are controlled by the applicable party.

(J.A. 59).

At the arbitration hearing, the parties presented expert testimony as to whether the Intellectual Property they brought into the Joint Venture was improved. The Panel found Solazyme's expert to be more "persuasive and credible" than Roquette's. (J.A. 63). This is not challenged on appeal.

The Panel concluded its award as follows:

> We find that Roquette is presently attempting to patent intellectual property in its own name and marketing products that are based upon intellectual property and products that Solazyme contributed to the Joint Venture: a high lipid algal flour and a high protein algal powder. SRN worked with these products and improved them as reflected in the patent applications filed by SRN. Roquette did not previously possess any products which were in any way similar to those contributed by Solazyme and worked upon by SRN. Under the JVOA (§21:1), upon the dissolution of the Joint Venture, the improvements to the Licensed Intellectual property licensed to SRN by Solazyme shall be assigned exclusively to Solazyme. SRN shall assign exclusively to Solazyme all of the patents, patent applications, trade secrets and know-how of the Joint Venture.

(J.A. 65–66 (footnote omitted)).

In essence, the Panel rejected Roquette's claim to ownership of the copycat applications—a claim that was not asserted beyond the bare filings themselves, as Roquette refused to produce or address this issue head-on. The Panel instead concluded that these copycat applications were Improvements on property licensed by Solazyme to

7

SRN and, pursuant to the applicable dissolution provision, must be assigned exclusively to Solazyme.

Given the breadth of the arbitration provision and the obvious "connection" between the copycat applications and the applicable provision of the relevant documents, we conclude that the Panel acted within its authority as to the aspects of its award complained of by Roquette.

Roquette's focus, however, is on the paragraph that follows the conclusion cited above, that reads:

> We also find that Roquette breached Section 3.3 of the Material Transfer Agreement and that the so-called shadow patent applications filed by Roquette and all patents that may be subsequently issued, and the related know-how, now the property of Roquette, belong to Solazyme and must be assigned by Roquette to Solazyme.

(J.A. 66). This language forms the basis for Roquette's assertion that the Panel improperly declared a breach of the MTA—which had no arbitration provision— and exceeded its authority in ordering relief under that agreement.

Whether or not it was proper for the Panel to find a breach of the MTA, we view this additional finding on the part of the Panel to be surplusage. The Panel had previously set forth its directive that "the improvements to the Licensed Intellectual Property licensed to SRN by Solazyme shall be assigned exclusively to Solazyme." (J.A. 66).[3] Thus, the Panel's notation regarding the breach added nothing to the award.

---

[3] The District Court concluded that the Panel exceeded its authority by finding a breach of the MTA.  We do not reach this issue as it has it has no bearing on the result in this case.  We note that we find it curious that Roquette, if it believed that the MTA was not

Roquette further objects that the Panel lacked authority to grant fees, since it exceeded its authority in arbitrating the above-discussed matter. Because we affirm the Panel's authority to resolve the dispute, we affirm its award of fees as well.

Accordingly, we will affirm the order of the District Court.

---

properly the subject of the JVOA arbitration, did not demand arbitration under the MTA—a different provision. We find Roquette's claim that it properly had title to the copycat applications and thus had nothing to arbitrate to be a bit strained.