NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 17-2284 and 17-2759
_____

CENTURY III MALL PA., LLC.,

Appellant in No. 17-2284

v.

SEARS ROEBUCK & CO.,

Appellant in No. 17-2759

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 2-16-cv-01839)
Honorable Lisa P. Lenihan, United States Magistrate Judge
_____

Submitted under Third Circuit L.A.R. 34.1(a)
May 22, 2018

BEFORE:  MCKEE, SHWARTZ, and COWEN, Circuit Judges

(Filed: December 20, 2018)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 and
does not constitute binding precedent.

COWEN, <u>Circuit</u> <u>Judge</u>.

Plaintiff Century III Mall PA LLC ("Century III") appeals from the order of the United States District Court for the Western District of Pennsylvania granting the motion to dismiss its amended complaint filed by Defendant Sears Roebuck and Co. ("Sears") and confirming the arbitration award in Sears's favor. Sears, in turn, appeals from the District Court's subsequent order granting Century III's motion for an extension of time to file its notice of appeal. We will affirm both orders.

## I.

In 1979, Sears (the "Tenant") entered a 40-year lease (the "Lease") with Century III (the "Landlord") pursuant to which Sears constructed and maintained an anchor store at Century III Mall. Sears was subject to an operating covenant requiring the space to be operated as a Sears store for the first fifteen years and as a Sears or another department store for the subsequent five years. The Lease further provided that, if Sears elects to discontinue the operation of a department store, Century III may within sixty days "'elect to terminate this Lease and acquire the Sears Building and Improvements as hereinafter set forth', upon which acquisition the lease automatically terminates." <u>Century III Mall PA LLC v. Sears Roebuck & Co.</u>, Civil Action No. 16-1839, 2017 WL 1927737, at *1 (W.D. Pa. May 10, 2017). "[Section] 6.3(b) then addresses valuation and potential continued other use of the space by Sears, if Sears elects to cease retail operations during (*subparagraph i)* or after expiration of (*subparagraph ii*) of the 20-year operating

covenant[.]"[1] Id. at *1. The Lease also specified a method of calculating the depreciated book value of the Tenant's "Building and Improvements" (specifically on a straight line basis in accordance with Sears's customary method of computing the book value of similar types of buildings and improvements). Finally, the Lease included an arbitration provision, stating, inter alia, that "the arbitrators are without power 'to change any terms of this Lease or deprive any party of any right provided for herein or modify or extinguish any obligation of either party imposed hereby.'" Id. at *2 (quoting JA27-JA28.).

In 2014, Sears notified Century III of its election to cease operation of its store.

---

[1] Section 6.3(b) specifically stated the following:

(i) if termination of operation shall occur during the period of Tenant's operating covenant, as set forth in Subparagraphs 6.1 (a) and (b), Landlord agrees to pay Tenant, within ninety (90) days after exercising its election to terminate, Tenant's depreciated book value of its Building and Improvements or the appraised fair market value thereof, whichever is greater. Each party shall appoint one (1) appraiser for the purpose of the determining the fair market value and in the event they cannot jointly agree upon the value, the arithmetical average of the values submitted by such appraisers shall be deemed to be the fair market value of Tenant's Building and Improvements. . . .; and

(ii) If Tenant shall discontinue the operations of a retail Department Store after the expiration of Tenant's operating covenant . . . and Landlord exercises its option to terminate this Lease, Landlord shall pay Tenant, within ninety (90) days after exercising its election to terminate, the amount of Tenant's depreciated book value or the appraised fair market value of the leasehold improvements made by Tenant, determined as in (1) above, whichever is greater, provided, however, that if Landlord does not elect so to purchase Tenant's Building and Improvements, Tenant may use Tenants' Building for any lawful purpose.

Century III, 2017 WL 1927737, at *1.

Century III elected to terminate the Lease and acquire the "Building and Improvements." Sears offered an appraisal of $9,200,000 (as well as a book value calculation of $3,937,636). Century III's appraisal was a negative $11,100,000. The parties disputed the respective findings and Sears sought arbitration. A panel of three arbitrators was selected (the "Panel") and hearings were conducted on three separate days. In a 19-page opinion (the "Opinion"), "[t]he Panel found that [Century III] had unambiguously exercised its option; both appraisers valued an incorrect property interest; even if the Panel looked to the average of the appraisers' values, it would not be the purchase price because the depreciated book value was greater; and Sears had properly established that book value." Id. at *2 (citing Dist. Ct. ECF No. 6, Ex. A). The Panel ultimately awarded $3,937,636 to Sears.

Century III brought this Federal Arbitration Act ("FAA") action seeking vacatur under 9 U.S.C. § 10. Sears filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In an order entered on May 10, 2017, the District Court[2] granted this motion, dismissed the amended complaint with prejudice, and "further ordered that the Arbitration Award in favor of Sears, Roebuck and Co., is confirmed pursuant to 9 U.S.C. § 9." (JA3.) On June 11, 2017, Century IIII filed its notice of appeal with the District Court. In a June 13, 2017 order, the Third Circuit Clerk informed the parties that the notice of appeal was not filed within the time prescribed by Federal Rule of Civil Procedure 4(a)(1) and that only the District Court may extend the time to file a notice of

---

[2] The parties consented to a United States Magistrate Judge conducting any and all proceedings in this matter.

appeal in limited circumstances provided by Federal Rules of Appellate Procedure 4(a)(5) and 4(a)(6). The parties were directed to file written responses addressing our authority to consider the appeal within fourteen days from the date of the Clerk's order. On June 26, 2017, Century III filed with the District Court a motion for extension of time to file its notice of appeal. On June 27, 2017, Sears filed its response to this Clerk's order, the District Court granted the extension motion, and Century III filed its own response. The District Court subsequently granted Sears's motion for reconsideration and vacated its June 27, 2017 order. After additional briefing by the parties, the District Court again granted Century III's extension motion. In turn, the Clerk referred the issue of jurisdiction to the merits panel.

## II.

While the notice of appeal in a civil case generally must be filed within thirty days after entry of the judgment or order, see 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A), the district courts do possess "limited authority to grant an extension of the 30-day time period," Bowles v. Russell, 551 U.S. 205, 208 (2007). A district court may extend the time to file a notice of appeal if the party moves no later than thirty days after this period of time and shows, inter alia, excusable neglect. See 28 U.S.C. § 2107(c); Fed. R. App. P. 4(a)(5). This concept of excusable neglect calls for a case-specific equitable inquiry by the district court, which we review for an abuse of discretion. See, e.g., Ragguette v. Premier Wines & Spirits, 691 F.3d 315, 322, 324-27 (3d Cir. 2012). We have looked to a number of factors as relevant to this inquiry, e.g., "the danger of prejudice . . . , the length of the delay and its potential impact on judicial proceedings, the reason for the delay,

5

including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" Id. at 324 (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)); see also Consolidated Freightways Corp. of Del. v. Larson, 827 F.2d 916, 919 (3d Cir. 1987) (identifying similar list of factors). "'This court interprets Rule 4(a)(5) to require a finding of excusable neglect in those instances where the court, after weighing the relevant considerations is satisfied that counsel has exhibited substantial diligence, professional competence and has acted in good faith to conform his or her conduct in accordance with the rule, but as a result of some minor neglect, compliance was not achieved.'" Ragguette, 691 F.3d at 326 (quoting Consolidated, 827 F.2d at 920). In turn, excusable neglect must be demonstrated up to the time the extension motion is filed. See, e.g., id. at 330.

We conclude that, given the specific circumstances, the District Court did not abuse its discretion by granting Century III relief under Rule 4(a)(5). Sears takes particular issue with the proffered reason for the delay as well as whether Century III's counsel really exhibited substantial diligence and professional competence. It also looks to the amount of time it took to file the extension motion. According to Century III, the notice of appeal was filed on Sunday, June 11, 2017, rather than on the Friday, June 9, 2017 deadline, "'[d]ue to a mistake in communication between the company and counsel, and a misunderstanding of instructions internally related to conveyance of the financial information to the broker and how that conveyance was to trigger the filing of a notice of appeal.'" (Sears's Second-Step Brief at 17 (quoting Dist. Ct. ECF No. 17 at 2).) By itself, this terse explanation is rather problematic. See, e.g., Ragguette, 691 F.3d at 328

6

("We also are troubled by the fact that Rohn [the moving party's attorney] essentially and rather conveniently sought to shift at least some of the blame from herself to another person (who actually was no longer with the firm by the time of the Rule 4(a)(5) hearing, did not submit any declaration in support of the motion, and did not appear at the hearing itself)."). However, the District Court appropriately found that "counsel did make an error, but it was not the result of professional incompetence, and counsel was not ignorant of the rules of procedure." (JA24.) Unlike his counterpart in Ragguette, 691 F.3d at 322 (notice of appeal filed after extension motion granted on remand), Century III's counsel immediately filed the notice of appeal over the weekend following the Friday deadline. It is also uncontested that the notice of appeal was served upon counsel for Sears. Cf., e.g., Consolidated, 827 F.2d at 919-20 (vacating order denying extension motion because, among other things, appellant timely serviced notice of appeal upon opposing counsel). In Ragguette, the attorney "purportedly did not discover that no notice of appeal had been filed until her preparation for the March 1, 2010 fee hearing—approximately a month after the deadline for filing a notice of appeal and approximately two months after the District Court's summary judgment order." Ragguette, 691 F.3d at 331. She likewise did not mention the mistake or possibility of an appeal at the fee hearing, id., and did not file the extension motion until "the 59th day of the 60-day period" with "only . . . one more business day" remaining to request relief under Rule 4(a)(5), id. at 332. Counsel in this proceeding, however, filed the extension motion on June 26, 2017, even though the responses addressing our authority to hear this appeal were not due until the next day and he still had until July 10, 2017 to file the motion. It also appears that, on June 15, 2017

7

and June 16, 2017 (during the same week the notice of appeal was filed), "counsel for Century III communicated with counsel for Sears by way of telephone and email regarding the untimely notice of appeal" and unsuccessfully sought to "reach agreement with Sears' counsel regarding an extension for the notice of appeal."[3]  (Century III's Third-Step Brief at 4.)

We accordingly turn to the merits of Century III's appeal.[4]  We agree with the District Court that, given the applicable FAA standards, "[Century III's] assertions that the [Panel] Opinion 'departed dramatically from the unambiguous terms of the Lease', 'exceeded the Arbitrator's authority', and was an 'irrational error requiring vacatur', [JA35], do not pass muster."  Century III, 2017 WL 1927737, at *6.

Century III acknowledges, that while "'courts are neither entitled nor encouraged simply to "rubber stamp" the interpretations and decisions of arbitrators,'" they still "apply a highly deferential standard of review in these instances."  (Century III's First-Step Brief at 17-18 (quoting Metromedia Energy, Inc. v. Enserch Energy Servs, Inc., 409 F.3d 574, 579 (3d Cir. 2005)).)  It was the Panel's task to interpret and enforce the parties' contract.  See, e.g., Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 220 (3d

_____

[3]  Sears asserts that Century III has continued to miss deadlines imposed by this Court.  It provides no authority for why such considerations have any real bearing on the present inquiry.

[4] The District Court had subject matter jurisdiction under 9 U.S.C. §§ 9 and 10 and 28 U.S.C. § 1332.  Although Century III asserts that Sears never alleged facts sufficient to show a basis for subject matter jurisdiction, it is clear that such jurisdiction exists given the uncontested diversity allegations set forth in Century III's own pleading.  This Court has appellate jurisdiction pursuant to 9 U.S.C. § 16(a) and 28 U.S.C. § 1291.  The parties appear to agree that we exercise de novo review over the District Court's ruling on the merits.  See, e.g., Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., 868 F.2d 52, 56 (3d Cir. 1989).

Cir. 2012), aff'd, 133 S. Ct. 2064 (2013). "When [the arbitrator] makes a good faith attempt to do so, even serious errors of law or fact will not subject his award to vacatur." Id. (citing Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d 237, 243 (3d Cir. 2005)). Century III argues that the Panel rewrote the unambiguous terms of the Lease "'as if "leasehold improvements made by Tenant" were the same as "Building and Improvements."'" (Century III's First-Step Brief at 19.) However, the Panel adopted a reasonable interpretation of the terms "leasehold improvements" (a term that was not defined in the Lease) and "Buildings and Improvements." With respect to the Panel's rejection of the appraisals offered by Century III as well as Sears, "it took care to note that the same result would have obtained had it accepted both appraisals." Century III, 2017 WL 1927737, at *4 (citing Dist. Ct. ECF No. 6 Ex. A at 9 n.3; Dist. Ct. ECF No. 6 at 13-14). In addition, the Lease provided a specific formula for determining the book value, which the Panel rationally applied. Given Sears's appraisal of $9.2 million and Century III's appraisal of a *negative* $11.1 million, the book value was higher than the arithmetical average of the appraisers' figures. Likewise, the Panel, even though it believed that "GAAP" principles did not apply, went on to determine that these principles were actually satisfied. See, e.g., Mutual Fire, 868 F.2d at 56 (noting that court does not sit as arbitration panel reexamining evidence under guise of determining whether panel exceeded authority). Finally, the Panel reasonably determined that Century III's letter unambiguously stated that it was exercising its option pursuant to Section 6.3(a) and that the language of 6.3(b) "could not 'be fairly interpreted to provide the Landlord a second

9

option.'"[5]  Century III, 2017 WL 1927737, at *4 (quoting Dist. Ct. ECF No. 6, Ex. A at 5).

## III.

For the foregoing reasons, we will affirm the orders of the District Court.

---

[5] Century III also argues that the District Court erred by entering an order enforcing the arbitration award despite the absence of a formal application to enforce. However, Sears expressly asked the District Court to confirm in its motion to dismiss.