**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1814
_____

ALAN SIMONS,
                    Appellant

v.

JOHN BROWN; LORRAINE BROWN
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:19-cv-05074)
District Judge: Hon. Gerald A. McHugh
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 24, 2022

Before: HARDIMAN, SHWARTZ, and FUENTES, *Circuit Judges*.

(Filed: February 1, 2022)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

This is an appeal from a District Court order confirming an arbitration award and denying a petition to vacate. We will affirm, essentially for the reasons stated by the District Court in its thorough and persuasive opinion.

I[1]

At issue is a business dispute regarding RDS Vending LLC. Appellant Alan Simons owned RDS until January 2007, when he sold half the company to Appellee John Brown through multiple agreements. Two of these Simons-Brown Agreements—the "Buy-Sell Agreement" and the "Put-Call Agreement"—restrict Simons's and Brown's ability to alienate their interests in RDS. The Buy-Sell Agreement provides:

> Neither of the Stockholders shall, at any time during the term of this Agreement, give, sell, assign, transfer, encumber, or otherwise dispose of all or any part of his Stock unless and until he shall (i) dispose of all of his Stock under the Put and Call, (ii) obtain the written consent of the other Stockholder or (iii) comply in full with the requirements of this Agreement.

App. 175. The Put-Call Agreement similarly provides that "[b]oth Simons and [Brown] agree not to pledge, mortgage, or in any manner encumber or allow liens to be attached against the Option Interests (in the case of Simons) or [Brown]'s 50% Membership Interests." App. 250.

Tom Hutchison was also party to the Simons-Brown Agreements. RDS hired Hutchison and was grooming him "to manage the business after Simons was bought out

---

[1] Brown moved for summary judgment in the arbitration, so the Arbitrator was required to evaluate the facts in the light most favorable Simons. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). We likewise recite the facts in the light most favorable to Simons.

by Brown or after Simons'[s] death." App. 965. Between December 2006 and February 2019, unbeknownst to Simons, Brown and Hutchison entered into side contracts with each other. Prior to December 8, 2006, Brown purported to sell 4% of his interest in RDS to Hutchison for $100,000 under "General Agreement No. 1." This first agreement was drafted without an attorney. Weeks later, however, an attorney drafted "General Agreement No. 2," which Brown and Hutchison executed on January 2, 2007. This second agreement superseded General Agreement No. 1, giving Hutchison the right to obtain 4% of Brown's interest in RDS for $100,000, but "only upon the earlier of Brown's buy-out of Alan Simons, under the agreements entered into between them, or upon Mr. Simons'[s] earlier written consent." App. 228. Almost two years later, Brown and Hutchison altered their arrangement through a "General Agreement Modification," which gave Hutchison the right to purchase more of Brown's interest in RDS and entitled Hutchison to a portion of each profit distribution from RDS. General Agreement No. 2 and the Modification remained in force until February 2019, when Brown and Hutchison signed an "Agreement and Mutual Release" terminating Hutchison's rights under the Modification in exchange for lucrative severance benefits and distributions, in addition to other consideration.

In 2017, before the Mutual Release was signed, Simons received an offer from Cross Keys Capital "to find a buyer for RDS at a price that would pay Simons significantly more for his 50% ownership of RDS than he would receive from Brown pursuant to the call formula in the [Simons-Brown] Agreements." App. 966. Cross Keys

found a buyer willing to pay $26 million; but the Simons-Brown Agreements required both partners to agree, and Brown rejected the offer.[2]

In February 2019, Simons learned about the Brown-Hutchison Agreements and the Mutual Release. Citing an arbitration clause in the original Buy-Sell Agreement, Simons filed a Demand for Arbitration with the American Arbitration Association (AAA) in March 2019 against John Brown and his wife, Lorraine Brown (who was party to one of the Simons-Brown Agreements). Simons sought a declaratory judgment that Brown materially breached the Simons-Brown Agreements by entering into the side agreements with Hutchison, thus relieving Simons of his contractual obligations. The AAA appointed Judy Weintraub as the arbitrator, without objection from Simons.

After engaging in extensive discovery, Brown filed a motion for summary judgment, which Simons opposed. Weintraub held oral argument on Brown's motion in October 2019 and issued a draft order five days later that gave both parties one week to "advise whether there is anything material that [she] failed to consider or if anything is unclear." App. 939. Simons raised numerous objections to Weintraub's proposed findings in a twelve-page "Memorandum of Errors in the Draft Order." App. 950. Weintraub issued her final order three days later, granting summary judgment and "hold[ing] that Brown did not materially breach the [Simons-Brown Agreements]." App. 975. While

---

[2] The Arbitrator accepted Simons's "allegation that Brown authorized [him] to seek a sale of RDS through Cross Keys, and that Brown rejected the $26 million [] offer because of his desire to receive an extra $4 million to pay off Hutchison, which amount was not forthcoming." App. 967.

reiterating the undisputed findings of fact, her thirteen-page order considered and directly addressed every objection Simons made in his Memorandum of Errors. As relevant to this appeal, she expressly rejected Simons's proffered "extrinsic evidence" as unnecessary to interpret the Brown-Hutchison Agreements' "clear, unambiguous language," concluding that Brown had not sold or encumbered his interest in violation of the Simons-Brown Agreements. App. 972.

Simons filed a petition to vacate the arbitration order and arbitration award. The Browns opposed Simons's request and cross-moved for confirmation of the award. The District Court denied Simons's petition and granted the Browns' cross-motion. *Simons v. Brown*, 444 F. Supp. 3d 642, 657 (E.D. Pa. 2020). In its thorough opinion, the District Court noted that Simons failed to "establish[] the presence of any procedural irregularities resulting in fundamental unfairness;" and that, "[e]ven if he made such a showing, Simons waived objection [to procedural issues] . . . by failing to raise them during the arbitration proceedings, particularly in a case where the arbitrator provided the parties with a preview of her decision." *Id.* at 653–54. Further, the District Court concluded that Weintraub did not exceed her powers in applying the summary judgment standard, nor did she manifestly disregard the law.[3] This timely appeal followed.

---

[3] Brown contends there is no longer a justiciable controversy because Simons served an allegedly "irrevocable Put Notice, the effect of which is that Simons must sell and Brown must buy Simons'[s] 50% share in RDS by no later than March 17, 2021." Brown Br. 7. As a result, Brown argues "the sole relief that Simons sought in the underlying arbitration and in the District Court—namely, to avoid having to sell [] his half of RDS to Brown— is moot." *Id.* We disagree. If Simons prevails on his claims here and in a new arbitration, Brown's alleged material breach could vitiate any duties or obligations under the Simons-

## II

The District Court exercised diversity jurisdiction pursuant to 28 U.S.C. § 1332; we have jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a) ("An appeal may be taken from an order . . . confirming or denying confirmation of an award." (cleaned up)). "On appeal from a district court's ruling on a motion to confirm or vacate an arbitration award, we review its legal conclusions de novo and its factual findings for clear error." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947–48 (1995)), *aff'd* 569 U.S. 564 (2013). Given "strong federal policy in favor of commercial arbitration, we begin with the presumption that the award is enforceable." *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)).

The Federal Arbitration Act enumerates four narrow grounds for vacating an award, two of which Simons presses in this appeal, *see* 9 U.S.C. § 10(a)(3)–(4). We "enforce the bargains implicit in [arbitration] agreements by enforcing arbitration awards absent a reason to doubt the authority or integrity of the arbitral forum." *Sutter*, 675 F.3d at 219 (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008)).

## III

Simons first argues that the District Court erred in declining to vacate the arbitration award under 9 U.S.C. § 10(a)(3), given Weintraub's alleged refusal to consider evidence "[m]aterial and [p]ertinent" to interpreting the Brown-Hutchison

---

Brown Agreements, including the put-call arrangement which gives effect to his recent Put Notice. So this case is not moot.

Agreements. Simons Br. 29; *see* 9 U.S.C. § 10(a)(3) (permitting a court to vacate an award "where the arbitrators were guilty of misconduct in . . . refusing to hear evidence pertinent and material to the controversy"). We disagree.

Under § 10(a)(3), an award can be vacated only if the arbitrator's error in excluding evidence was "in bad faith or so gross as to amount to affirmative misconduct." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987). The arbitrator's error must be "not simply an error of law, but [one] which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 120 (3d Cir. 2016) (citation omitted); *see also Sutter*, 675 F.3d at 219 ("We do not entertain claims that an arbitrator has made factual or legal errors.").

The record here does not reflect such an error. The District Court correctly determined that "Weintraub had an ample basis to find, as a matter of law, that the Brown-Hutchison Agreements were unambiguous, with the result being that she did not require any extrinsic evidence to interpret them." *Simons*, 444 F. Supp. 3d at 651. Pennsylvania contract law, which governed the agreements, did not require Weintraub to examine all extrinsic evidence Simons proffered because the text was unambiguous. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 613 (3d Cir. 1995) ("Only where the writing is ambiguous may the factfinder examine all the relevant extrinsic evidence to determine the parties' mutual intent." (citation omitted)). "[A] contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction," *id.* at 614 (citation omitted); rather, "[a] contract is ambiguous if it is

7

*reasonably* susceptible of different constructions and capable of being understood in more than one sense." *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468–69 (Pa. 2006) (emphasis added). The "reasonably" qualifier is important: there is no ambiguity if one of the two proffered meanings is unreasonable. *See Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 430 (Pa. 2001) ("[C]ontractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts."). Simons argues that General Agreement No. 2 had contradictory provisions. He claims one paragraph referred to a condition without which the sale would not proceed while another referenced "Hutchison's interest," which Simons suggests means a sale occurred notwithstanding the condition. App. 228–29. But as the District Court rightly noted, "Weintraub did not find that the two paragraphs of General Agreement No. 2 conflicted with each other when read naturally; rather, she found that Simons's preferred reading of one paragraph would cause it to conflict with the other if she adopted it." *Simons*, 444 F. Supp. 3d at 652 (emphasis deleted). Because Weintraub concluded that only one proffered reading was reasonable, she correctly refrained from examining extrinsic evidence or witness testimony. *See Duquesne Light*, 66 F.3d at 613. So the District Court's refusal to vacate under § 10(a)(3) was not error.

Second, Simons claims the District Court should have vacated the arbitration award under 9 U.S.C. § 10(a)(4), given Weintraub's "manifest disregard" for the summary judgment standard in her arbitration and decision. Simons Br. 43–44; *see* 9 U.S.C. § 10(a)(4) (permitting a court to set aside arbitration awards "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite

8

award upon the subject matter submitted was not made"). "A party seeking relief under [§ 10(a)(4)] bears a heavy burden. 'It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error.'" *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). The court's "sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether [she] got its meaning right or wrong." *Id.* This is a difficult standard to meet, and Simons's claim falls short.

As an initial matter, Simons presents no basis for concluding that Weintraub "exceeded [her] powers" by using the summary judgment standard. *See* 9 U.S.C. § 10(a)(4). Simons's own Demand for Arbitration framed the dispute as appropriate for summary adjudication: a "simple" case involving a "clear and material breach of the agreements between the parties." App. 806. And since Simons cites no Pennsylvania law prohibiting summary judgement to resolve this kind of dispute, we cannot say that Weintraub exceeded her power.

Nor did Weintraub manifestly disregard the summary judgment standard. She cited the summary judgment standard verbatim from Simons's response to Brown's initial motion, and she structured her decision to mirror the arguments in Simons's brief. "The manifest disregard standard requires more than legal error. Rather, the arbitrator['s] decision must fly in the face of clearly established legal precedent, such as where an arbitrator appreciates the existence of a clearly governing legal principle but decides to

ignore or pay no attention to it." *Whitehead*, 811 F.3d at 121 (cleaned up).[4] The standard is "extremely deferential" to an arbitrator's award. *Id.* at 121 (citation omitted). Weintraub demonstrated her careful consideration of the evidence presented, and her reasonable conclusion, in a thorough and detailed opinion—which she offered in draft form for both parties to review before finalizing the award. Because we cannot say Weintraub manifestly disregarded the law, the District Court did not err when it denied vacatur under § 10(a)(4).

* * *

For the reasons stated, we will affirm the order of the District Court.

---

[4] The District Court accurately noted that we have "not yet taken a position" on "whether manifest disregard of the law continues to be viable in the Third Circuit as a judicial gloss upon the standard set forth in Section 10(a)(4) for vacation of an arbitration award." *Simons*, 444 F. Supp. 3d at 655. Like the District Court, we will "assume without deciding that manifest disregard remains a viable basis for vacation." *Id.* at 656.