NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2224
_____

FACTA HEALTH INC; FRANK J. COZZARELLI; ROBERT MANGONE;
PAUL KAPP; ROBERT LAUDADIO; GOTTA GUY INC,
                                                          Appellants

v.

PHARMADENT LLC; ALAN WICKENHAUSER;
STEPHEN PEIPERT
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-20-cv-09631)
District Judge: Honorable Stanley R. Chesler
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on April 12, 2024

Before: CHAGARES, *Chief Judge,* PORTER, and SCIRICA, *Circuit Judges.*

(Filed: September 30, 2024)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**SCIRICA**, *Circuit Judge*

After a four-day hearing, an American Arbitration Association Panel found that Facta Health, Inc. breached its Patent Purchase Agreement with Pharmadent, LLC. The Panel rescinded the agreement and returned the intellectual property to Pharmadent, but also permitted Pharmadent to keep Facta's initial payment. Pharmadent and its members Dr. Alan Wickenhauser and Stephen Peipert moved to confirm the Final Award, and Facta and its principals Frank J. Cozzarelli, Robert Mangone, Paul Kapp, Robert Laudadio, and Gotta Guy, Inc. moved to vacate it. The District Court confirmed the Final Award. Facta now appeals the District Court's judgment. Because the District Court did not err in confirming the Final Award, we will affirm.

I.

Facta and Pharmadent entered into a Patent Purchase Agreement ("PPA"), under which Pharmadent sold Facta patents and intellectual property for a topical anesthetic developed by Wickenhauser and Peipert. In exchange, Pharmadent would receive a $400,000 initial payment and a royalty payment plan, which included a $3,000,000 advance upon the product's approval by the Food and Drug Administration ("FDA") or the Department of Defense ("DOD"). The PPA provided that the Parties would resolve any dispute before a three-member American Arbitration Association ("AAA") Panel under its Commercial Arbitration Rules. The PPA further provided that the hearing conducted by the Panel would last no longer than a day, but that the time limit was not jurisdictional and could be extended for good cause. Finally, the PPA specified that Pharmadent's remedies included, *inter alia*, rescission of the agreement if Facta failed to

2

pay the royalty fee, as well as "equitable relief, which may be appropriate in the circumstances." App. 1369.

Although the PPA contemplated the Parties' cooperation in seeking the product's approval, the relationship soured, leading to an arbitration, state court proceeding, and two amendments to the PPA. The relationship deteriorated further, and Facta initiated a second arbitration and state court action. Pharmadent removed the matter to federal court on diversity grounds, where the District Court granted its motion to stay the litigation and compel arbitration. In the arbitration, Pharmadent asserted counterclaims, including breach of contract and breach of the implied covenant of good faith and fair dealing, and sought, *inter alia*, rescission of the PPA and return of the intellectual property.

The Panel determined that due to the number of witnesses the Parties wished to present, good cause existed to schedule ten days of evidentiary hearings, which the Panel later reduced to four days. Facta also filed thirteen applications for pre-hearing dispositive motions, which the Panel denied.

In its pre-hearing briefing, Facta urged the Panel to apply certain legal doctrines when it interpreted the PPA and addressed issues in the dispute. Facta also asserted that Dr. Robert Lake, the regulatory director of Pharmadent, should be prohibited from offering an expert report and testimony. During the four-day hearing, the Panel heard testimony from four witnesses and considered some 350 exhibits. The Panel addressed Facta's contentions respecting Lake's testimony, explaining that it would assign the report and testimony "the weight [it] believe[d] is appropriate." App. 980. At the conclusion of the hearing, Facta's counsel confirmed that Facta was satisfied that it had

3

the opportunity to present its case to the Panel.

Upon consideration of the Parties' arguments presented at the hearing, as well as their pre- and post-hearing briefing, the Panel issued a Final Award in favor of Pharmadent and rejected all Facta's claims. Notably, the Panel rejected Facta's fraudulent inducement claim and other "vague allusions to [Pharmadent's] . . . fraud," App. 330, explaining that Facta's principals testified that Pharmadent "had not made any intentional misrepresentation to, or concealed any information from, Facta," App. 331. The Panel concluded that Facta breached the PPA by terminating Wickenhauser from his role in overseeing the approval process and that Facta breached the implied covenant of good faith and fair dealing by "repeatedly and intentionally interfer[ing] with Pharmadent's ability to lead and control the DOD/FDA approval and testing process[]." App. 324, 327. Observing that the Parties agreed that the PPA entitled Pharmadent to equitable relief, and that the plain language of the PPA vested the Panel with "the sound discretion" to fashion "the specific parameters of any equitable remedy," the Panel rescinded the PPA and assigned the intellectual property to Pharmadent. App. 335. The Panel also permitted Pharmadent to keep the initial payment, concluding that Pharmadent's retention of the payment "equitably addresse[d]" Facta's "wrongful conduct in frustrating and delaying Pharmadent's pursuit of FDA approval," which "deprived Pharmadent . . . of the opportunity to enjoy the potential rewards of DOD/FDA approval and reduced the remaining life of" the patents. App. 337.

The District Court granted Pharmadent's motion to confirm the Final Award and denied Facta's cross-motion to vacate, finding that Facta's arguments did not warrant

vacatur under 9 U.S.C. § 10(a). *Facta Health, Inc. v. Pharmadent, LLC*, No. CV 20-9631 (SRC), 2023 WL 3965921, at *3 (D.N.J. June 13, 2023).

Facta timely appealed.

## II.

As a threshold matter, Facta argues that the District Court may have lacked subject matter jurisdiction. Facta explains that when Pharmadent removed on the stated basis of diversity jurisdiction, Wickenhauser filed a declaration that he and Peipert were the only two members of Pharmadent. Facta argues that this declaration is suspect because some four months later, Wickenhauser submitted a new drug application to FDA in which he wrote that Pharmadent consisted of four members.

Diversity jurisdiction must exist at the time the complaint was filed and at the time of removal, and the burden is on the moving party to establish federal jurisdiction. *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013). Wickenhauser's declaration established complete diversity among the Parties, and there was no contrary evidence in the record at the time of removal. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (explaining that for diversity purposes, a limited liability company is a citizen of every state in which a member is a citizen). Facta does not explain how the new drug application demonstrates that Pharmadent failed to meet its burden to establish jurisdiction at the time of removal.

Accordingly, the District Court exercised diversity jurisdiction over the matter under 28 U.S.C. §§ 1332(a) and 1441(b). We have jurisdiction under 28 U.S.C. § 1291 and the Federal Arbitration Act. *See* 9 U.S.C. § 16(a)(1)(D) ("An appeal may be taken

from . . . an order . . . confirming or denying confirmation of an award or partial award . . . .").

## III.

"On appeal from a district court's ruling on a motion to confirm or vacate an arbitration award, we review its legal conclusions de novo and its factual findings for clear error." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947–48 (1995)), *as amended* (Apr. 4, 2012), *aff'd*, 569 U.S. 564 (2013). "A more deferential standard of review applies to the arbitration award itself," and it "begin[s] with the presumption that the award is enforceable." *Id.* (citing *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)). "We do not entertain claims that an arbitrator has made factual or legal errors," *id.*, and "will 'vacate [an award] only under [the] exceedingly narrow circumstances' listed in 9 U.S.C. § 10(a)," *France v. Bernstein*, 43 F.4th 367, 377 (3d Cir. 2022) (quoting *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013) (alterations in original)). These four circumstances are:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Facta argues that the Final Award should be vacated because the Panel exceeded its legal authority, committed numerous legal errors, and displayed partiality for Pharmadent—all of which violated § 10(a) and deprived Facta of due process. Facta's arguments largely concern errors by the Panel, rather than the District Court's application of the § 10(a) factors, which are not grounds for vacatur. *See Sutter*, 675 F.3d at 219 (starting that vacatur can only be based upon one of the four factors).

Moreover, as Pharmadent rightly observes, Facta has failed to preserve a number of these arguments. In many instances, Facta does not cite caselaw or the parts of the record that support its arguments or describe what § 10(a) factors are implicated by the District Court's or Panel's purported errors. *See* Fed. R. App. P. 28(a)(8)(A); L.A.R. 28.1(c). Where Facta has failed to do so, its arguments are improperly presented and thus forfeited. *See Doeblers' Penn. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 821 n.10 (3d Cir. 2006) (explaining that "passing and conclusory statements do not preserve an issue for appeal" and that an appellant's brief requires "argument [and] legal support" to develop a claim); *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 145–47 (3d Cir. 2017) (noting that inadvertent failure to properly preserve an issue under Rule 28 constitutes forfeiture). Nevertheless, we conclude that the District Court did not err in confirming the Final Award.

A.

The majority of Facta's arguments concern error under §§ 10(a)(3) and (4),

7

although in many instances Facta fails to note under which factor the District Court erred. Accordingly, we will address Facta's arguments under these two factors, consistent with the District Court's opinion. *See Facta Health, Inc.*, 2023 WL 3965921, at *3.

Under § 10(a)(3), a court may vacate an arbitration award where the Panel is "guilty of misconduct" in refusing to postpone a hearing or hear relevant evidence or engage in other "misbehavior" that prejudices a party. "'Misconduct' is conduct that 'so affects the rights of a party that it may be said that he was deprived of a fair hearing.'" *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 245 (3d Cir. 2021) (quoting *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968)). "A 'fair hearing' is one where the parties have notice and an opportunity to present evidence and arguments before an impartial arbitrator." *Id.* (citing *Newark Stereotypers' Union*, 297 F.2d at 600).

Under § 10(a)(4), a court may vacate an award when the Panel exceed its powers. This occurs when an arbitrator "decides an issue not submitted to him, grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether." *Sutter*, 675 F.3d at 219–20 (citing *Ario v. Underwriting Members of Syndicate 53 at Lloyds for the 1998 Year of Acct.*, 618 F.3d 277, 295–96 (3d Cir. 2010)).

First, Facta argues that the Panel committed misconduct by denying it a pre-arbitration hearing on certain dispositive motions, which would have narrowed the scope

8

of issues in the arbitration.[1]  We are not persuaded.

The Panel did not "deprive[] [Facta] of a fair hearing" on these motions because it was not required to hear them in the first place.  *See CPR Mgmt.*, 19 F.4th at 245 (internal quotation marks omitted).  The PPA specified that the Panel would resolve any dispute under the AAA's Commercial Arbitration Rules.  Rule R-33, in turn, provides that an arbitrator "*may* allow the filing of and make rulings upon a dispositive motion *only if* the arbitrator determines that the moving party has shown that the motion is likely to succeed and dispose of or narrow issues in the case."  A.A.A. Commercial Arb. R. 33 (emphasis added).  The Panel instructed the Parties to address this standard in any application for a dispositive motion they wished to file.  The Panel denied Facta's applications for dispositive motions because Facta failed to do so, and because Facta's applications concerned fact-intensive inquiries "not susceptible to a dispositive motion."  App. 1256.  Accordingly, the Panel did not commit misconduct because Facta was able to present its applications for dispositive motions to the Panel for its review.  Lastly, to the extent Facta

---

[1] Facta also explains that the improper denial of its applications for dispositive motions resulted in the Panel's incorrect determination that good cause existed for exceeding the PPA's one-day hearing limitation.  Facta's claim that the Panel exceeded its authority by failing to adhere to the PPA's one-day hearing limitation also fails.  First, Facta forfeited this argument by failing to present it to the District Court.  *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) (explaining that failure to develop arguments before the district court results in forfeiture on appeal).  Next, the PPA explicitly provided that this limitation was not jurisdictional, that the hearing could be extended for good cause, and that extensions of time would not affect an award's validity.  Accordingly, the Panel did not exceed its authority when it determined that good cause existed to extend the hearing beyond one day given the amount of evidence the Parties wished to present.  Nor can Facta argue that the Panel's extension of the hearing was somehow misconduct; indeed, at the close of the hearing, Facta acknowledged that it was satisfied with its ability to present its case to the Panel.

9

argues that the Panel exceeded its authority under § 10(a)(4) by denying its pre-hearing dispositive motions, it is clear that the PPA and Commercial Arbitration Rules gave the Panel the authority to rule on the motions in this fashion.

Second, and relatedly, Facta argues that the Panel "refused to apply the law on settlements and claim preclusion" to the instant dispute when it denied Facta's applications for dispositive motions on these topics. Facta Br. 42. Facta has failed to preserve this claim, however, as its arguments are devoid of record citations. *See* Fed. R. App. P. 28(a)(8)(A). And much like in its filings before the Panel and District Court, Facta does not explain how these doctrines should have applied to this dispute. To the extent Facta argues that the Panel committed misconduct or exceeded its authority by denying Facta's applications for dispositive motions on these topics, this argument fails because the Panel had the authority under the PPA and Commercial Arbitration Rules to deny them. Moreover, Facta cannot credibly argue that the Panel committed misconduct by denying Facta to present its preclusion arguments at all when its counsel told the Panel at the close of the hearing that Facta was satisfied with its ability to present its case.

Third, Facta argues that the Panel improperly permitted Lake to testify as a fact and expert witness and failed to apply the net opinion rule to Lake's expert report. As the District Court correctly observed, "in making evidentiary determinations, an arbitrator need not follow all the niceties observed by the federal courts." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 557 (3d Cir. 2009) (internal quotation marks omitted) (quoting *Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 481 F.3d 813, 816 (D.C. Cir. 2007) (internal quotation marks omitted)). "Rather, an

arbitrator 'need only grant the parties a fundamentally fair hearing.'" *Id.* (quoting *Lessin*, 481 F.3d at 816). The Panel explained it would give Lake's report and testimony "the weight [it] believe[d] [was] appropriate," which reflected its awareness and consideration of Lake's qualifications. App. 980. Accordingly, the Panel did not commit misconduct in its evaluation of Lake's testimony. Nor did the Panel exceed its authority because, as we have already discussed, the Panel evaluated the testimony under the Commercial Arbitration Rules, which gave it greater flexibility in making evidentiary determinations. *See, e.g.*, A.A.A. Commercial Arb. R. 34(a) ("Conformity to legal rules of evidence shall not be necessary.").

Fourth, Facta argues that the Panel erred by refusing to apply New Jersey's parol evidence rule to the PPA. Facta explains that the Panel engaged in an oral rewriting of the contract by admitting parol evidence about unambiguous provisions of the PPA. But Facta does not explain how the Panel's purportedly erroneous application of New Jersey contract law constitutes grounds for vacatur, nor does it identify the unambiguous provisions of the PPA to which the Panel allegedly misapplied the parol evidence rule. In any event, Facta's claims respecting the Panel's interpretation of the PPA fail.

The Panel informed Facta that it did not need to lodge its parol evidence-based objections on the record and could instead address the issue in its post-hearing briefing. The Panel asked the Parties to "set forth [their] contentions regarding the meaning or interpretation" of the PPA provisions that formed the basis of any claim, as well as to discuss "authorities on any aspect of this proceeding that they believe may be helpful for the Panel's . . . preparation of the award." App. 1286. Although Facta identified these

11

provisions and "how they should be interpreted," App. 1164, in its post-hearing briefing, it did not raise the parol evidence rule or explain which evidence presented at the hearing should be considered or excluded under the rule. Because the Panel gave Facta the opportunity to make parol evidence arguments in its post-hearing briefing, it did not commit misconduct. *Cf. CPR Mgmt.*, 19 F.4th at 245.

Moreover, the Panel's award was not irrational because it was derived from the PPA and governing law. *See* 9 U.S.C. § 10(a)(4). The Panel had the authority to interpret the PPA, including the ability to look beyond the text of the PPA when construing it. *See Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 243 (3d Cir. 2005) (holding that a party merely "tak[ing] issue with [an arbitrator's] contractual interpretation . . . is not sufficient to justify vacatur of the award," so long as the arbitrator meets a "minimum rationality threshold" in interpreting the contract); *cf. Am. Cyanamid Co. v. Fermenta Animal Health Co.*, 54 F.3d 177, 181 (3d Cir. 1995). And its conclusions respecting Facta's breach of the PPA and implied covenant of good faith and fair dealing were supported by the PPA and record evidence.[2]

Finally, Facta argues that the Panel rendered an incomplete award by rescinding the PPA but permitting Pharmadent to retain the initial payment. Facta maintains that the

---

[2] For similar reasons, Facta's arguments that the Panel refused to apply all New Jersey Law, misapplied the Patent Act, and incorrectly determined that Facta breached the PPA and Pharmadent exercised its best efforts to pursue product approval all fail. *See, e.g.*, *Sutter*, 675 F.3d at 219 (explaining that legal error is not a basis for vacatur of arbitrator's decision); *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) ("[A]n arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." (quoting *E. Associated Coal Corp. v. Mine Workers,* 531 U.S. 57, 62 (2000))).

12

Panel disregarded New Jersey law on rescission and made no effort to restore the Parties to their status quo *ex ante*.[3] We are not persuaded.

When a party breaches the implied covenant of good faith and fair dealing, a court may exercise its equitable powers and rescind the contract. *See Medivox Prods., Inc. v. Hoffmann-LaRoche, Inc.*, 256 A.2d 803, 814 (N.J. Super. Ct. Law. Div. 1969); *Roach v. BM Motoring, LLC*, 155 A.3d 985, 995 (N.J. 2017). "The object of . . . rescission is to restore the parties to the *status quo ante* and prevent the party who is responsible for the misrepresentation from gaining a benefit." *Bonnco Petrol, Inc. v. Epstein,* 560 A.2d 655, 662 (N.J. 1989). "As a general rule a contract is not to be partially rescinded," *id.*, but "this is not an absolute requirement." *Notch View Assocs. v. Smith*, 615 A.2d 676, 680 (N.J. Super. Ct. Law. Div. 1992). "Rescission remains a form of equitable relief in whatever setting its need arises, and courts wielding that remedy retain the discretion and judgment required to ensure that equity is done. In furtherance of that objective, a court may shape the rescission remedy in order to serve substantial justice." *Rutgers Cas. Ins. Co. v. LaCroix*, 946 A.2d 1027, 1035 (N.J. 2008); *see also First Am. Title Ins. Co. v. Lawson*, 827 A.2d 230, 241 (N.J. 2003) (explaining that rescission "properly depends on the totality of circumstances in a given case and resides within a court's discretion.").

---

[3] Relatedly, Facta argues that the partial rescission award stripped its principal Mangone of certain rights and benefits conferred to him under the First Amendment to the PPA even though no claims were asserted against him. Facta fails to explain what these purported rights and benefits are and provides no citations to the record to support its arguments. *See Doeblers' Penn. Hybrids, Inc.*, 442 F.3d at 821 n.10. Moreover, the Panel's decision did not bind Mangone as the Panel awarded relief against Facta, and not its principals.

Under this standard, courts retain significant discretion to shape a rescission remedy. *See, e.g., Lawson*, 827 A.2d at 232 (partially rescinding legal malpractice coverage agreement as to law firm and defalcating partners because of equitable fraud, but retaining coverage under policy for any innocent partner); *34 Label St. Assocs. v. Cecere*, No. A-0183-15T1, 2017 WL 5988064, at *4, *7 (N.J. Super. Ct. App. Div. Dec. 4, 2017) (rescinding a ground lease but awarding the landlord money for the tenant's use and possession of the property).

Here, the Panel did not issue an irrational or incomplete arbitration award, nor did the District Cour err in confirming the Final Award under § 10(a)(4).[4] First, in construing the PPA, the Panel reasonably determined that it was authorized to fashion the parameters of any equitable remedy for the injured party. Second, its chosen remedy of partial contract rescission has some basis in New Jersey law of equitable remedies. The rule that rescission requires the restoration of the Parties to their status quo is a general one, but not an absolute requirement. *See Notch View Assocs.,* 615 A.2d at 680. And this comports with the principle that a court retains discretion to "shape the rescission remedy in order to serve substantial justice." *Rutgers Cas. Ins. Co.*, 946 A.2d at 1035. So the Panel had an adequate basis to fashion its partial rescission remedy, which was supported by the Panel's findings of fact from the record. In these circumstances, the District Court

---

[4] It is also evident that the Panel did not commit misconduct because the Parties were afforded a fair hearing on the issue of rescission. *See CPR Mgmt.*, 19 F.4th at 245. The Panel addressed the topic of rescission on the record and specifically ordered post-hearing briefing on the issue. Facta addressed the topic in its submissions, which the Panel considered in reaching the Final Award.

did not err under § 10(a)(4) by confirming the award.[5] *See Major League Baseball*

*Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam) ("[I]f an 'arbitrator is

even arguably construing or applying the contract and acting within the scope of his

authority,' the fact that 'a court is convinced he committed serious error does not suffice

to overturn his decision.'" (quoting *E. Associated Coal Corp.*, 531 U.S. at 597 (internal

quotation marks omitted))).

B.

---

[5] Although Facta does not raise the doctrine by name, it also argues that the Panel manifestly disregarded New Jersey law on rescission. The Parties dispute whether the manifest disregard standard is good law after the Supreme Court's decision in *Hall Street Associates, LLC v. Mattel, Inc.*, which held that § 10(a) provides the "exclusive grounds for expedited vacatur" of an arbitration award. 552 U.S. 576, 584 (2008). This Court has yet to address on whether the manifest disregard for the law standard remains a valid basis for vacatur of an arbitration award, and we decline to do so now. *See Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 120–21 (3d Cir. 2016). Nevertheless, assuming that the manifest disregard standard persists, Facta has not shown that vacatur of the Final Award is warranted under that standard. *See, e.g., Sabre GLBL, Inc v. Shan*, 779 F. App'x 843, 849 (3d Cir. 2019) (assuming without deciding if the manifest regard standard remained good law in finding that arbitrator did not manifestly regard Texas law on damages).

To obtain vacatur under this "extremely deferential standard," *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003), a party challenging an award must show more than arbitrator error in interpreting or applying the governing law. *Whitehead*, 811 F.3d at 121. Rather, a party must show that the arbitrator's decision "'fl[ies] in the face of clearly established legal precedent,' such as where an arbitrator 'appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.'" *Id.* (first quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995); then quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986)).

Here, the Panel requested briefing on the issue or rescission, and then applied the law consistent with the discretion it retained—and explicitly conferred under the PPA—to shape an equitable remedy. *See, e.g., id.* In these circumstances, the Panel did not manifestly disregard New Jersey law on rescission.

15

Facta also urges that the Panel ignored Pharmadent's purportedly fraudulent statements about the patents to the FDA and DOD in its new drug applications, and that the Panel instead characterized this allegedly fraudulent behavior as Pharmadent using its best efforts to approve the product. To the extent that Facta argues that any perjury or false testimony by Pharmadent influenced the Panel, Facta is mistaken.

Under § 10(a)(1), a court may vacate an arbitration award where it was "procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). A party seeking vacatur under this factor "must make a three-part showing: first, that there was a fraud in the arbitration, which must be proven with clear and convincing evidence; second, that the fraud was not discoverable through reasonable diligence before or during the arbitration; and, third, that the fraud was materially related to an issue in the arbitration." *France v. Bernstein*, 43 F.4th 367, 378 (3d Cir. 2022).

First, Facta forfeited this issue by failing to raise it before the District Court. *See Barna*, 877 F.3d at 145–47. Next, even if Facta had not forfeited this issue, Facta's fraud allegations are based on documents and testimony presented at the hearing, so it cannot argue that Pharmadent's fraud "was not discoverable through reasonable diligence before or during the arbitration." *France*, 43 F.4th at 378. Moreover, despite Facta's exhortations to the contrary, its witnesses at the arbitration testified that Pharmadent never concealed any information or made any misrepresentations to Facta.

C.

Next, Facta argues that the Final Award should be vacated because the Panel showed "strong favoritism" for Pharmadent. Facta Br. 40.

16

Under § 10(a)(2), "evident partiality or corruption in the arbitrators" is grounds for vacatur of an award. 9 U.S.C. § 10(a)(2). For an arbitrator's bias to be "evident," it "must be sufficiently obvious that a reasonable person would easily recognize it." *Freeman*, 709 F.3d at 253.

Facta insists that the Panel's litany of erroneous, one-sided rulings in Pharmadent's favor can "only evidence bias." Facta Br. 48. But Facta fails to explain how these decisions, standing alone or considered cumulatively, are attributable to any partiality by the Panel. *See Freeman*, 709 F.3d at 253 ("The conclusion of bias must be ineluctable, the favorable treatment unilateral"). At most, Facta complains about legal errors, which are not grounds for vacatur. *See Sutter*, 675 F.3d at 219.

## D.

Lastly, Facta argues that many of the Panel's purported errors, such as its denial of Facta's applications for dispositive motions and failure to conduct a review of Lake's expert report, constituted violations of Facta's and Mangone's due process rights. Facta forfeited this argument because it made only a singular, passing, and unsubstantiated reference to due process violations in its briefing before the District Court. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . but not squarely argued . . . are considered waived."). In any event, Facta cites to no caselaw supporting its contention that a private arbitration proceeding involves state action requisite for a constitutional due process claim. *See Davis v. Prudential Secs., Inc.*, 59 F.3d 1186, 1191 (11th Cir. 1995) (collecting cases and finding that "the state action element of a due process claim is absent in private

17

arbitration cases"); *see also Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (explaining that due process protections "do not extend to 'private conduct abridging individual rights.'" (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961)). Moreover, Facta voluntarily entered into the PPA, in which it agreed to private arbitration to resolve disputes that could arise, and, as we have already discussed, was given ample opportunity to present its arguments to the Panel, so its challenge fails. *Cf. Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 940 (10th Cir. 2001).

## IV.

For the foregoing reasons, we will affirm the District Court's order enforcing the Final Award.